ENTERED ON THE DOCKET
DATE 9/18/95

U.S. DIST
SEP 15  2:44 PM '95

BY B. [signature]

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.

ARMANDO NELSON PELLIERE,        Case No. 93-40003-03-SAC

        Defendant.

MEMORANDUM AND ORDER

On June 13, 1995, the Tenth Circuit entered an order finding that this court erred in enhancing Armando Nelson Pelliere's sentence under U.S.S.G. § 3C1.1 for obstruction of justice. The court of appeals also concluded that this court failed to make adequate findings of fact with respect to a three point enhancement under § 3B1.1(b) based on Pelliere's role in the offense. In pertinent part, the Tenth Circuit stated:

> The government must prove by a preponderance of the evidence any sentence enhancement it asserts the court should grant. *See United States v. Torres*, 53 F.3d 1129 (10th Cir. 1995).
>
> . . .
>
> Enhancement under section 3B1.1(b) applies to a defendant who "exercised some degree of control or organizational authority over someone subordinate to him in the drug distribution scheme." *United States v. Roberts*, 14 F.3d 502, 524

(10th Cir. 1993) (*citing United States v. Reid,* 911 F.2d 1456, 1464 (10th Cir. 1990), *cert. denied,* 498 U.S. 1097, 112 L. Ed. 2d 1074, 111 S. Ct. 990 (1991)). We review the district court's fact findings under the clearly erroneous standard and the application of the guidelines de novo. 14 F.3d at 522-23. In *Roberts*, we pointed out that "'in enhancing a defendant's sentence based on his role in the offense, a district court must make specific factual findings as to that role.'" *Id.* at 522 (*quoting United States v. Stevens*, 985 F.2d 1175, 1184 (2d Cir. 1993)). We further pointed out that when a district court's findings "do not fulfil the specific criteria mandated" by section 3B1.1, a reviewing court may not supply those specifics on the basis of the prosecutor's statements at sentencing, the probation officer's response to the defendant's objections to the presentence report, or other evidence in the record. 14 F.3d at 523.

[T]he district court concluded that it did not need either to accept the hierarchy proposed by the government or determine whether Mr. Pelliere was second-in-command at least part of the time in order to decide whether an enhancement was warranted under section 3B1.1. Although the court nonetheless concluded that an enhancement was proper, it articulated no specific findings to support its decision. Here, as in Torres, "appellate review of the propriety of applying this serious enhancement is hindered by the absence of a clear picture of the reasoning employed by the sentencing court." *Torres*, 53 F.3d 1129 at 1143 (footnote omitted). Findings are not adequate if "they do not constitute evidence of decision-making authority or control over a subordinate necessary to conclude [the defendant] was a supervisor or manager." *Roberts*, 14 F.3d at 524. The court's failure to make those findings here has left our appellate review to "flounder in the 'zone of speculation.'" *United States v. Slater*, 971 F.2d 626, 633 (10th Cir. 1992) (citations omitted).

Specific fact findings are particularly vital in this case. The grand jury testimony the government introduced on the control issue related mainly to the activities of Marcos Torres and was hearsay. Moreover, some of this evidence was directly contradicted by the report of

2

> undercover agent Angel Cruz stating that a reliable informant told him Scott-Sanjur was second-in-command and that other informants told him Scott-Sanjur took over when Torres was arrested. See rec., supp. vol. II, gov't ex. 1. We recognize that the district court may use reliable hearsay testimony in determining an appropriate sentence. *See United States v. Roach*, 978 F.2d 573, 576 (10th Cir. 1992); U.S.S.G. 6A1.3(a); *see also United States v. Reid*, 911 F.2d 1456, 1464 (10th Cir. 1990) (hearsay statement cannot be used in sentencing absent some minimal indication of reliability other than mere allegation). Here, however, the court did not specify what particular hearsay statements it was relying upon, nor did it make any assessment of reliability.
>
> Moreover, because the use of hearsay in sentencing raises due process concerns, "the defendant [must] be given adequate notice of and an opportunity to rebut or explain information that is used against him." *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir.), *cert. denied*, 497 U.S. 1038, 111 L. Ed. 2d 811, 110 S. Ct. 3302 (1990). The lack of specificity here frustrates both Mr. Pelliere's ability to challenge the sentencing court's determination on appeal and our ability to undertake a meaningful review.
>
> In sum, we conclude that the district court erred in enhancing Mr. Pelliere's sentence under section 3C1.1 for obstruction of justice. We further conclude that the court failed to make adequate fact findings with respect to enhancement under section 3B1.1 based on Mr. Pelliere's role in the offense.

*United States v. Pelliere*, 57 F.3d 936, 938-940 (10th Cir. 1995).

The Tenth Circuit remanded the case to vacate Pelliere's sentence and to resentence in light of its opinion.

On September 11, 1995, the court conducted a sentencing hearing. At the hearing, the government presented the testimony of Daryl Jackson. Pelliere presented no testimony, but did submit a sentencing brief

3

in support of his contention that his sentence should not be enhanced under § 3B1.1.

In accordance with the Tenth Circuit's decision, Pelliere's sentence was not enhanced pursuant to § 3C1.1 for obstruction of justice. After considering the evidence presented, the briefs and arguments of counsel, and the applicable law, the court again found that the government had introduced reliable evidence demonstrating by a preponderance of the evidence that Pelliere was a manager or supervisor in the criminal conspiracy to distribute cocaine. Consequently, Pelliere's sentence was enhanced pursuant to § 3B1.1. Based upon the defendant's criminal history and offense level, the guideline range was 87 to 108 months. The court imposed a sentence of 95 months, approximately the middle of the guideline range.

This memorandum and order constitutes the court's findings with regard to the enhancement imposed under § 3B1.1.

### Arguments of the Parties

The government contended that Pelliere's sentence should be enhanced under § 3B1.1(b) as he occupied a role of supervisor or manager in the extensive cocaine conspiracy headed by Marcos Torres, a/k/a "Porsche." Pelliere assumed this position when Torres, the organizer and leader of the drug conspiracy, left the country for a number of months during 1991. During Torres' absence,

4

Pelliere managed or supervised a number of coconspirators involved in the distribution of cocaine. The government argued that the testimony of Lisa Ponder, Daryl Jackson and Anthony Felix, and Agent James Kanatzer, coupled with all of the other evidence, clearly demonstrates that an enhancement is appropriate.

Pelliere, "dissecting" the testimony of each witness, argued that the credible evidence does not demonstrate that he occupied a supervisory or managerial role. Instead, Pelliere contended that the evidence, at best, demonstrated that he was merely the middle-man/delivery man between upper management (Marcos Torres) and the retail distributors of cocaine. Consequently, an enhancement under § 3B1.1(b) was inappropriate. Pelliere also suggests that another person, Aurelio Scott-Sanjur, was actually second in command.

### Applicable Law

Section "3B1.1 permits the district court to grant a base offense level increase from two to four levels if it finds by a preponderance of the evidence a defendant was an organizer, leader, manager or supervisor in a given offense." *United States v. Santistevan*, 39 F.3d 250, 254 (10th Cir. 1994). Section 3B1.1 of the United States Sentencing Commission, *Guidelines Manual*, provides in pertinent part:

> Based on the defendant's role in the offense, increase the offense level as follows:

5

. . .

>   (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels. . .

"To qualify as a supervisor, 'one needs merely to give some form of direction or supervision to someone subordinate in the criminal activity.'" *United States v. Pedraza*, 27 F.3d 1515, 1530 (10th Cir.) (quoting *United States v. Hanif*, 1 F.3d 998, 1004 (10th Cir.), *cert. denied,* 114 S. Ct. 573 (1993) (quoting *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir.) *cert. denied,* 498 U.S. 870 (1990))), *cert. denied,* 115 S. Ct. 520 (1994). Section 3B1.1 does not require that a defendant manage or supervise at least five persons to receive the enhancement; instead, to receive an adjustment under § 3B1.1 for his role as a manager or supervisor, the defendant must have managed or supervised at least one other participant in a criminal enterprise involving five or more participants. *United States v. Johnson*, 4 F.3d 904, 917 (10th Cir. 1993) (citations omitted). In determining whether an enhancement is appropriate, "[t]he court may consider, *inter alia*, the defendant's exercise of decisionmaking authority, the nature of his participation in the offense, and the degree of control and authority he exercised over others." *Pedraza*, 27 F.3d at 1530.

## Findings

6

The court finds that the government has established by a preponderance of the reliable evidence that Pelliere occupied a supervisory or managerial role in the offense and that an enhancement under § 3B1.1(b) is warranted. The evidence clearly established that Pelliere was not merely a middle-man/delivery man, but instead was a person occupying a supervisory or managerial role. In reaching this conclusion, the court has considered all of the evidence available to the court. Specifically the court finds the following evidence to warrant an enhancement under § 3B1.1(b).[1]

### Testimony of Lisa Ponder[2]

Lisa Ponder testified before the grand jury. Lisa Ponder also testified in the trial of Pelliere's codefendants, Brazier and Gooding.[3] Ponder testified

---

[1] In setting forth the testimony and evidence that the court relied upon in enhancing Pelliere's sentence, the court simply notes that the testimony of each person is basically consistent with and corroborated by the testimony of other witnesses. Conversely, there is little evidence undermining the credibility of testimony and weight of evidence relied upon by the court.

[2] It appears that one or more persons at the Tenth Circuit, while reviewing the evidence submitted in this case, underlined, checked, marked and/or highlighted portions of the original exhibits admitted during Pelliere's first sentencing. While using the court file, this court removed several "post-it notes" from the exhibits.

[3] On September 8, 1995, the Tenth Circuit entered an order affirming the conviction and sentence of Ricardo Gooding. *See United States v. Gooding*, No. 94-3090, 1995 U.S. App. LEXIS 25355 (10th Cir. Sept. 8, 1995). Brazier's appeal is

before the grand jury that Armando Pelliere, her boyfriend, and Marcos Torres, had on one occasion asked her to go to New York *for them* to pick up a quantity of cocaine. Ponder agreed to transport the cocaine for money.[4] The trip to New York was arranged by telephone, and the phone records confirm that several calls were made to numbers linked to Arturo Brazier.[5] On that occasion, Ponder transported the money ($21,000) in a girdle. The money belonged to both Torres and Pelliere. Pelliere placed the money in the girdle. Ponder was chosen "because white people didn't get stopped as much" and because she "looked like a college girl" who no one was going to bother. Ponder traveled to New York were she was met by Brazier. Ponder exchanged the money for cocaine.

Ponder knew that Pelliere and Torres were in the business of selling cocaine. Pelliere and Torres obtained their cocaine from Panama or New York. After someone else

---

still pending.

[4] Torres and Pelliere gave Ponder $1,000 to pay for the airplane ticket and told her to keep what was left. In addition, Ponder was also promised additional cash when she returned with the cocaine. Porsche gave her an additional $100 and Pelliere was supposed to give her an additional $200.

[5] Ponder's story was also confirmed in several other respects. Records introduced in the trial of Brazier and Gooding confirmed that Brazier rented a room at the Oasis Motel on the day in question.

8

transported the cocaine,[6] both Pelliere and Torres would split, cut and separate the cocaine. The cocaine was split between Pelliere and Torres based upon their respective capital contributions. Ponder's information came primarily from her own observations and the statements of Pelliere himself.

### Testimony of Anthony Felix

Anthony Felix testified before the grand jury as well as in the trial of Gooding and Brazier. Felix testified before the grand jury that Pelliere "was running the operation while Porsche was in Panama." Felix was intimately familiar with the conspiracy's operations based upon his own personal observations.

### Testimony of Daryl Jackson

Daryl Jackson testified before the grand jury as well as at the September 11, 1995, resentencing hearing. At the relevant time, Jackson was a dealer of cocaine and purchased his supply from Marcos Torres. When Torres informed Jackson that he would be gone for a period of time,[7] Torres indicated that Jackson should conduct his business through "Negro" (Alcides Alonso Plato) and Pelliere. Jackson described Plato as a "flunky" of

---

[6] Pelliere would sometimes transport the cocaine himself.

[7] Jackson subsequently learned that during his absence from Kansas, Torres was out of the country and in Panama.

Pelliere. Jackson personally observed the manner in which cocaine was distributed. Jackson personally observed Pelliere deliver drugs to him on two or three occasions. Jackson's testimony made it clear that Pelliere was more than a mere delivery man, but instead occupied a position of authority over persons within the drug conspiracy. Pelliere was essentially the second in command--and perhaps the person in command--while Torres was in Panama. Based upon his own observations, Pelliere controlled the distribution of drugs.

Jackson did describe Pelliere as a "middle-man" in the criminal organization. Notwithstanding that particular label, Jackson's descriptions of Pelliere's actions and authority are accurately characterized as those of a supervisor or manager. Jackson's attempt to explain his use of the phrase "middle-man" suggested that in his opinion Pelliere was a mid-level manager within the cocaine distribution network, as it was undisputed that Torres was the organizer or leader of the criminal enterprise.

### Agent Kanatzer

Agent Kanatzer testified at the February 9, 1993, detention hearing. Agent Kanatzer was involved in the investigation of this criminal enterprise since October of 1990. Agent Kanatzer testified that Pelliere ran the criminal cocaine operation from July of 1991 through November of 1991, i.e, the time that Torres was out of the

10

country.

## Summary

Each of the witnesses testified independently to facts sufficient to sustain an enhancement under § 3B1.1. The testimony of the witnesses is corroborated by the testimony of other witnesses as well as all of the evidence available to the court. In light of this fact, Pelliere's attempt to impeach each of the witnesses is largely unavailing. Jackson, who was subject to cross-examination, based upon his own personal observations, opined that Pelliere was in charge of the criminal enterprise in Torres' absence. Torres' statements to Jackson on this subject are not hearsay as they are admissible as coconspirator statements made in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2)(E); *United States v. Powell*, 982 F.2d 1422 (10th Cir. 1992), *cert. denied*, 113 S. Ct. 2361 (1993). In any event, the court finds Jackson's testimony credible. The testimony of Ponder and Felix, although not subject to cross-examination by Pelliere, are also credible. Agent Kanatzer's testimony in large part confirmed the testimony of Ponder, Felix and Jackson.

The court rejects Pelliere's argument that because Scott-Sanjur was actually "second in command," that he should not be saddled with a three point enhancement under § 3B1.1(b). The evidence found credible by the court indicated that at least at one point in time Pelliere was

11

second in command of the conspiracy. Moreover, even if an organizational chart were drawn indicating that Pelliere was positioned at a lower rung than Scott-Sanjur within the conspiracy's hierarchy, that fact would not preclude the court from finding that Pelliere occupied a role of supervisor or manager. *Cf.*, USSG § 3B1.1, *Commentary, Application Note* 4 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.").

In sum, the credible testimony and evidence available to the court clearly demonstrates that Pelliere was a manager and supervisor of the criminal enterprise that involved five or more participants including Aurelio Scott-Sanjur, Ricardo Taylor, Alcides Plato, Anthony Felix, Daryl Jackson and Lisa Ponder. Consequently, an enhancement under § 3B1.1(b) was and is appropriate.

Dated this 15th day of September, 1995, Topeka, Kansas.

/s/ SAM A. CROW

Sam A. Crow, U.S. District Judge